IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRUCE D.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 18-cv-2047-DGW[2] |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB in January 2015, alleging a disability onset date of December 30, 2013. After holding an evidentiary hearing, an ALJ denied the application on September 19, 2017. (Tr. 13-20). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

**Issues Raised by Plaintiff**

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 10, 13.

Plaintiff raises the following issues:

1. The ALJ did not properly evaluate the opinion of his primary care physician, Dr. Schenewerk.

2. The ALJ's analysis of plaintiff's subjective symptoms is legally insufficient.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881,

886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity

3

since December 30, 2013, and he was insured for DIB through December 31, 2018. The ALJ found that plaintiff had severe impairments of osteoarthritis of both knees, degenerative disc disease, heart disease, sleep apnea, obesity, and COPD.

The ALJ found that plaintiff had the RFC to do light work, which requires lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. He was able to stand/walk or sit for 6 out of 8 hours a day. He was limited frequent climbing of stairs; no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; and occasional exposure to extreme temperatures, humidity, fumes, odors, dusts, and poor ventilation.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past relevant work. However, he was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1962 and turned 55 years old about two months after the date of the ALJ's decision. (Tr. 204). He said he was disabled because of a bad back, bad knees, bad hands, and borderline diabetes. He was 5' 7" tall and weighed 259 pounds. He stopped working in December 2013 because of his condition and because he was "laid off." (Tr. 208). He had worked in the past as

4

a millwright/laborer, a pipefitter, and a laborer/operator. (Tr. 230).

In March 2015, plaintiff said pain limited his ability to walk, lift, sit, reach, and bend. He had shortness of breath. He cooked every day, sometimes sandwiches and sometimes "regular complete meals." He did laundry, but it took 3 days because the machines were in the basement. He mowed the lawn with a riding mower, but it took 2 days. He shopped for groceries about once a week. (Tr. 215-222). In June 2015, he reported that he only cooked microwave meals and he did no household chores or yard work. (Tr. 252-253).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the hearing in July 2017. (Tr. 31).

Plaintiff testified that he had stabbing pains in his hip area and back when moving or doing anything. He lost strength in his hands and it was hard to grip. He had shortness of breath from COPD. Injections in his back gave him temporary relief. He took Percocet, Ibuprofen, and muscle relaxers. His medications made him a little drowsy. (Tr. 42-45). The surgery on his knee helped. (Tr. 46).

Plaintiff lived with his mother. His father died about a year and a half earlier. He made sure his mother took her medications and helped her in and out of the shower when she needed it. He cooked meals and went grocery shopping. Doing the dishes put pressure on his back and he had to lie down after doing them. He did laundry in small loads; folding clothes hurt his back. He mowed the lawn with a riding mower. It took about one hour. (Tr. 46-47). He had to lay down for about an hour twice a day. Pain kept him awake at night. (Tr. 50-51).

A vocational expert (VE) also testified. The VE testified that a person with plaintiff's RFC assessment could not do plaintiff's past work, but she could do other jobs such as retail marker, electronics sub-assembler, and small parts assembler. (Tr. 53-54).

3.   **Relevant Medical Records**

Dr. Christopher Schenewerk was plaintiff's primary health care provider. Plaintiff alleges that he became disabled as of December 30, 2013. Dr. Schenewerk saw him in May 2012 for right arm pain. (Tr. 353). The next visit was in July 2014, for ankle swelling and possible sleep apnea. (Tr. 352). The doctor's notes in this period are on preprinted forms and are not very detailed. Plaintiff was seen in August 2014; he said he needed more pain pills. Dr. Schenewerk circled "osteoarthritis" but did not indicate what part of the body was involved. There are no notes of physical exam. Hydrocodone was prescribed. (Tr. 351).

Dr. Schenewerk referred plaintiff to a pain management specialist, Dr. Anderson, for treatment of bilateral knee pain. In October 2014, plaintiff complained of lumbar pain as well as knee pain. Dr. Anderson noted that plaintiff's mother was alive and had dementia; his father was alive and had a history of cardiac stents. He diagnosed chronic lumbar pain and degenerative changes of the knees, and prescribed Mobic and hydrocodone/acetaminophen. (Tr. 405-407).

In November 2014, a lumbar MRI showed desiccation throughout the lumbar spine with loss of disc height at L5-S1. At L4-5, there was an annular bulge with

6

facet hypertrophy but no disc herniation or spinal canal stenosis. At L5-S1, there was an annular bulge with very small right paracentral protrusion. There was no spinal canal stenosis. Disc material abutted but did not displace the transiting right S1 nerve root within its lateral recess. There was mild bilateral foraminal narrowing. (Tr. 383).

In January 2015, Dr. Anderson began a course of epidural steroid injections at L5-S1. He noted that plaintiff complained of "pain demonstrating dysfunction that outweighs his observed pathology." He recommended physical therapy for core strengthening and conditioning. He also wrote that plaintiff "should not require daily narcotic analgesics based upon his findings." He wanted plaintiff to taper to no more than 60 hydrocodone tablets per month. (Tr. 396-397). He again noted in March 2015 that plaintiff related "pain and dysfunction that outweighs his objective findings." He also wrote that plaintiff "does not demonstrate pathology based upon our present database to suggest the need for long-term narcotic therapy." (Tr. 391).

In March 2015, Dr. Baumer performed arthroscopic surgery for a torn meniscus in the left knee. (Tr. 394).

Dr. Anderson saw plaintiff on March 21, 2016. He had administered several nerve root blocks. Plaintiff denied gait abnormality. On exam, Dr. Anderson noted no abnormal gait. He ordered another MRI due to plaintiff's complaints of pain radiating down the left leg. He planned to taper hydrocodone-acetaminophen and to stop it completely. (Tr. 498-502).

There is no indication that Dr. Schenewerk saw plaintiff between August

2014 and March 2016, although copies of some of the above notes from Drs. Anderson and Baumer are in Dr. Schenewerk's notes. Dr. Schenewerk saw plaintiff on March 29, 2016. The reason for the visit was "Disability." The doctor completed a form for disability. On exam, plaintiff had muscle spasms in the paraspinal muscles and straight leg raising was positive. There was swelling of the left knee. (Tr. 591-592.)

Dr. Schenewerk completed a form entitled "Medical Source Statement." Among other limitations, he indicated that plaintiff could sit for less than 2 hours total a day and stand for less than 2 hours total a day. He said that plaintiff's diagnoses were lumbago and osteoarthritis of the knees. He identified clinical findings and objective signs of "Abnormal gait, slow to stand, has to move constantly." He needed to be able to shift positions at will. He would be likely to miss work more than 4 days per month. (Tr. 452-454).

The next month, Dr. Anderson again noted no gait abnormality. Straight leg raising was negative. The dosage of hydrocodone-acetaminophen was reduced. (Tr. 493-496). In July 2016, plaintiff took a Percocet tablet that had been prescribed for his friend. As this was a breach of the opiate agreement, Dr. Anderson wrote that he would no longer prescribe hydrocodone-acetaminophen for plaintiff. The recent MRI showed stable lumbar spondylosis; stable to slight retraction of the right paracentral disc protrusion; and mild bilateral foraminal narrowing at L5-S1. On exam, gait was normal, straight leg raising was negative, and sensation was normal. Dr. Anderson recommended another epidural steroid injection. (Tr. 483-486).

In July 2016, Dr. Anderson noted "Illicit narcotic use with drug seeking behavior." He wrote that plaintiff "continues to demonstrate pain and dysfunction that far outweighs his objective findings." He recommended EMG and nerve conduction studies. (Tr. 481-482). In September 2016, Dr. Anderson said he would consider an L3-S1 facet block and that, if plaintiff did not respond to that treatment, he would not have much to offer him for long-term care. Plaintiff was not "an appropriate candidate for narcotic use" and demonstrated "questionable and likely poor motivation towards participating in his own care and/or improvement." (Tr. 472-473).

Dr. Schenewerk did not see plaintiff between March and August 2016. On August 31, 2016, plaintiff came in asking for pain medication because Dr. Anderson would no longer prescribe it for him. He admitted using marijuana for pain. Dr. Anderson had prescribed Gabapentin, but he did not want to take it. A PA in Dr. Schenewerk's office noted that Dr. Anderson was taking care of plaintiff's back. He refused to prescribe pain medication. (Tr. 587-590). In September 2016, a PA in Dr. Schenewerk's office agreed to prescribe Tramadol. There were no positive findings noted on exam. There was no edema in the extremities. (Tr. 584-585).

Plaintiff was seen a few more times by a PA in Dr. Schenewerk's office through January 2017. He was diagnosed with diabetes. There were no positive findings noted on physical exam. (Tr. 623-629).

In May 2017, Dr. Anderson noted that plaintiff had failed 2 drug screens and he recommended that plaintiff consider drug rehab. He noted that plaintiff's

"radiographic findings, examination and history are quite inconsistent with the degree of dysfunction he manifests." He ordered another MRI and noted that, if it did not show "objective findings to support his presenting symptoms," he would be discharged from care. (Tr. 643). A few days later, an MRI showed mild degenerative change at L5-S1, "grossly stable compared to the prior exam with minimal spinal canal stenosis and mild to moderate bilateral neural foraminal stenosis." (Tr. 657).

## Analysis

Plaintiff first argues that the ALJ erred in rejecting Dr. Schenewerk's' opinion.

Dr. Schenewerk treated plaintiff, but the ALJ was not required to fully credit his opinion because of that status; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Plaintiff's application was filed before March 27, 2017. The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides, in part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative

> examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques [,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

Here, the ALJ explained that she gave little weight to Dr. Schenewerk's opinion because the "recent medical records and objective findings do not support such a significantly limiting assessment." She referenced the May 2017 MRI, which showed that the degenerative change at L5-S1 was "grossly stable" and showed minimal spinal and canal stenosis and "mild to moderate" foraminal stenosis. She pointed out that Dr. Schenewerk did not treat plaintiff's back pain but referred him to Dr. Anderson. And, Dr. Anderson, the pain management specialist, had concluded that plaintiff's pain "far outweighs any objective findings" and had recorded that plaintiff exhibited drug seeking behavior and had breached an opiate agreement. (Tr. 18).

Plaintiff argues that the ALJ's decision fails to identify evidence that is inconsistent with Dr. Schenewerk's opinion, but then goes on to argue that the very

evidence cited by the ALJ is not inconsistent. According to plaintiff, Dr. Anderson's observations that his pain is out of proportion to the objective findings and that he exhibited drug seeking behavior are not inconsistent because they actually demonstrate that plaintiff is in a great deal of pain. While that may be a possible interpretation of the evidence, is not the only permissible interpretation. The ALJ could reasonable conclude that the MRI results and Dr. Anderson's observations are inconsistent with the extreme limitations assessed by Dr. Schenewerk. Plaintiff's argument is nothing more than a plea to this Court to reweigh the evidence and come to a different conclusion, which is not the Court's role. *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir. 2019).

Considering the deferential standard of judicial review, the ALJ is required only to "minimally articulate" her reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ easily met the minimal articulation standard here.

Plaintiff's only other argument is a challenge to the ALJ's finding that his subjective complaints were not supported by the record. He argues that the ALJ failed to explain how plaintiff's activities are inconsistent with his allegations.

SSR 16-3p supersedes the previous SSR on assessing the reliability of a claimant's subjective statements. SSR 16-3p became effective on March 28, 2016 and is applicable here. 2017 WL 5180304, at *1.

SR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR

16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529. *Ibid.*, at *10.

The new SSR does not purport to change the standard for evaluating the claimant's allegations regarding his symptoms. Thus, prior Seventh Circuit precedents continue to apply.

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

The ALJ observed that plaintiff can mow his lawn on a riding mower, shop, cook meals, and wash dishes. Further, in February 2016, plaintiff told his doctor that he was "under enormous stress" and he was "taking care of his parents." (Tr. 17).

The ALJ was certainly entitled to consider plaintiff's daily activities. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). The ALJ did not impermissively equate his daily activities with the ability to work full-time. Rather, she used his "reported activities to assess the credibility of [his] statements concerning the intensity, persistence, or limiting effects of [his] symptoms. . . ."

13

*Burmester,* 920 F.3d at 510.

In addition to plaintiff's activities, as required by § 404.1529 and SSR 16-3p, the ALJ considered the medical evidence including Dr. Anderson's observations, the course of treatment, the findings of the various doctors on physical exams, plaintiff's own statements to his treating doctors, and the medical opinions. The ALJ's conclusion as to the accuracy of plaintiff's statements was supported by the evidence and was not "patently wrong;" it must therefore be upheld. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. He has not identified a sufficient reason to overturn the ALJ's conclusion. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: December 4, 2019.**

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**